1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| JOSE PALACIOS, | ) Case No. ED CV 10-0368 JCG |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

18
19
20

**I.**

## INTRODUCTION AND SUMMARY

21      On March 10, 2010, plaintiff Jose Palacios ("Plaintiff") filed a complaint

22  against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social

23  Security Administration, seeking review of a denial of an application for disability

24  insurance benefits ("DIB").  [Docket No. 1.]

25      On September 30, 2010, Defendant filed his answer, along with a certified

26  copy of the administrative record.  [Docket Nos. 18, 21.]

27      On April 14, 2010, this matter was transferred to the calendar of the

28  undersigned Magistrate Judge.  [Docket No. 12.]  Both Plaintiff and Defendant

1  subsequently consented to proceed for all purposes before the Magistrate Judge
2  pursuant to 28 U.S.C. § 636(c).  [Docket Nos. 13, 14.]

3      Pursuant to a March 12, 2010 case management order, the parties submitted a
4  detailed, 20-page joint stipulation for decision on November 24, 2010.  [Docket No.
5  24.]  The Court deems the matter suitable for adjudication without oral argument.

6      In sum, having carefully studied, *inter alia*, the parties' joint stipulation and
7  the administrative record ("AR"), the Court concludes that, as detailed herein, there
8  is substantial evidence in the record, taken as a whole, to support the decision of the
9  Administrative Law Judge ("ALJ").  Thus, the Court affirms the Commissioner's
10  decision denying benefits.

11                                  **II.**

12            **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

13      Plaintiff, who was 50 years old on the date of his administrative hearing, has a
14  sixth grade education.  (*See* AR at 60, 395, 399.)  His past relevant work includes
15  employment as a coder of circuit boards, warehouse worker, and loader/unloader (*Id.*
16  at 412; *see also id.* at 74, 83.)

17      On May 10, 2005, Plaintiff filed an application for DIB alleging that he has
18  been disabled since June 30, 1998 due to dislocated discs in his back and headaches.
19  (*See* AR at 13, 44.)  Plaintiff's application was denied initially and upon
20  reconsideration, after which he filed a timely request for a hearing.  (*Id.* at 25, 26,
21  33, 34-39, 40, 42, 44-48, 49-52.)

22      On July 25, 2007, Plaintiff, proceeding *pro se*, appeared and testified at a
23  hearing ("Hearing") before an ALJ.  (*See* AR at 395, 397-415.)  Corinne Porter, a
24  vocational expert ("VE"), also testified.  (*See id.* at 412-13.)

25      On August 17, 2007, the ALJ denied Plaintiff's request for benefits.  (AR at
26  13-20.)  Applying the well-known five-step sequential evaluation process, the ALJ
27  found, at step one, that Plaintiff has not engaged in substantial gainful activity since
28  his alleged onset date of disability through his date of last insured.  (*Id.* at 15.)

2

1    At step two, the ALJ found that Plaintiff suffers from severe impairments

2  consisting of "status post several fractures and lumbar sprain/strain."[1]  (AR at 15

3  (bold omitted).)

4    At step three, the ALJ determined that the evidence does not demonstrate that

5  Plaintiff's impairments, either individually or in combination, meet or medically

6  equal the severity of any listing set forth in the Social Security regulations.[2]  (AR at

7  15-16.)

8    The ALJ then assessed Plaintiff's residual functional capacity[3] ("RFC") and

9  determined that he can perform light work, but limited him to "occasional climbing,

10  stooping, kneeling, crouching, crawling, any stooping, or any power gripping or

11  forceful torquing of the wrist."  (AR at 16 (bold omitted).)

12    The ALJ found, at step four, that Plaintiff lacks the ability to perform his past

13  relevant work.  (AR at 18.)

14    At step five, based on Plaintiff's RFC and the VE's testimony, the ALJ found

15  that "there were jobs that existed in significant numbers in the national economy that

16  [Plaintiff] could have performed," such as cleaner, sewing machine operator, or hand

17  packer.  (AR at 19 (bold omitted).)  Thus, the ALJ concluded that Plaintiff was not

18  suffering from a disability as defined by the Act.  (*Id.* at 13, 19-20.)

19    Plaintiff filed a timely request for review of the ALJ's decision, which was

20

21    [1]  Status post multiple fractures refers to the state or condition following several

22  fractures.  *Stedman's Medical Dictionary* 770, 1830 (28th ed. 2006).

23    [2]  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

24

25    [3]  Residual functional capacity is what a claimant can still do despite existing

  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

26  n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the

27  ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

  residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th

28  Cir. 2007).

1  denied by the Appeals Council.  (AR at 2-4, 9.)  The ALJ's decision stands as the
2  final decision of the Commissioner.

3                                    **III.**

4                          **STANDARD OF REVIEW**

5          This Court is empowered to review decisions by the Commissioner to deny
6  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
7  Administration must be upheld if they are free of legal error and supported by
8  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*
9  *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings
10 are based on legal error or are not supported by substantial evidence in the record,
11 the court may reject the findings and set aside the decision to deny benefits.
12 *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,
13 242 F.3d 1144, 1147 (9th Cir. 2001).

14         "Substantial evidence is more than a mere scintilla, but less than a
15 preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
16 evidence which a reasonable person might accept as adequate to support a
17 conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d
18 at 459.  To determine whether substantial evidence supports the ALJ's finding, the
19 reviewing court must review the administrative record as a whole, "weighing both
20 the evidence that supports and the evidence that detracts from the ALJ's
21 conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed
22 simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d
23 at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the
24 evidence can reasonably support either affirming or reversing the ALJ's decision,
25 the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*
26 (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

27

28

                                         4

**IV.**

**ISSUES PRESENTED**

Two disputed issues are presented for decision here:

1.     whether the ALJ properly assessed Plaintiff's credibility, (Joint Stip. at 3, 13-18); and

2.     whether the ALJ obtained a proper informed waiver of Plaintiff's right to counsel before proceeding with the hearing.  (*Id.* at 3-12.)

The Court addresses each argument in turn.

**V.**

**DISCUSSION AND ANALYSIS**

A.     Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly assess his credibility.  (*See* Joint Stip. at 13-15.)  Plaintiff maintains that "[e]xcept for stating that there is minimal evidence prior to the Plaintiff's date last insured, the ALJ provided no credibility analysis whatsoever."  (*Id.* at 14.)

1.     The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility

An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering.  (*See generally* AR at 13-20.)  Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on

5

1    clear and convincing reasons.  *See Benton*, 331 F.3d at 1040.

2                    2.    Plaintiff's Subjective Complaints

3         At the hearing, Plaintiff testified that "the main [problem that would prevent

4    him from working full time] is that [he] can't sleep at night."  (AR at 404.)  He

5    stated that he stopped working in 1998 due to pain.  (*Id.* at 409-10.)  He also

6    explained that he suffers from "very strong" pain, "severe headaches to the point

7    where it feels like [his head is] going to explode," and "tremors" in his "bones" due

8    to rheumatoid arthritis.  (*Id.* at 406, 407, 410.)

9         Plaintiff explained that between 1998 and 2002, he was taking care of his

10   three-year old daughter, an eight-year old, and "doing [almost all] the housework

11   and doing the chores around the house," including the grocery shopping.  (AR at

12   411.)  Plaintiff further testified that he "still" does the grocery shopping for his

13   household and spends approximately 10 hours per week washing and detailing cars

14   with his son.  (*Id.* at 401-02, 411.)

15        When questioned by the ALJ if Plaintiff received any treatment for his

16   complaints between 1998 and 2001, Plaintiff responded, "No.  No I haven't."  (AR

17   at 406.)  The ALJ also asked Plaintiff why he did not receive "any treatment in those

18   years after [he] got injured."  (*Id.* at 407.)  Plaintiff replied that he "was never told

19   [he] had osteoporosis[.]"  (*Id.*)

20              3.    The ALJ's Analysis of Plaintiff's Subjective Complaints

21        In assessing Plaintiff's credibility, the ALJ found that "while [Plaintiff's]

22   medically determinable impairments could have been reasonably expected to

23   produce some of his alleged symptoms, his statements concerning the intensity,

24   persistence and limiting effects of these symptoms are not sufficiently credible to

25   establish an inability to perform work within the limitations assessed . . . prior to his

26   date last insured."  (AR at 17.)  The ALJ found that "there is very little medical

27   evidence prior to his date last insured."  (*Id.*)

28        The ALJ also noted that an evaluation, completed by orthopedic surgeon

                                            6

1  Joseph S. Swickard, M.D. ("Dr. Swickard") on June 19, 2000, determined Plaintiff
2  "went through this obvious exaggerated motion of jerking during the exam for his
3  back and neck, yet it was obvious from observing him otherwise that he could move
4  his neck fluidly without jerking or grimacing, thus resulting in Dr. Swickard's
5  conclusion [Plaintiff] was magnifying his symptoms." (AR at 17 (internal quotation
6  marks omitted); *see also id.* at 376-79.)

7      Further, the ALJ indicated that both an examination by Dr. Swickard and
8  neurosurgeon Theodore L. Sawyer, M.D. ("Dr. Sawyer"), (AR at 98-107), resulted
9  in findings that Plaintiff's "complaints could not be objectively substantiated." (*Id.*
10 at 18.)

11              4.   The ALJ Properly Rejected Plaintiff's Subjective Complaints
12     The Court is persuaded that the ALJ provided clear and convincing reasons
13 for rejecting Plaintiff's credibility. Three reasons guide this determination.

14     First, the ALJ found that the objective medical evidence does not support
15 Plaintiff's alleged degree of disability. (AR at 17-18.) Plaintiff cannot identify any
16 objective evidence that supports his claims of total disability. (*See generally* Joint
17 Stip. at 4-9, 13-15.) Instead, both the examining orthopedic surgeon and examining
18 neurosurgeon agreed that there was no objective evidence to indicate that Plaintiff is
19 unable to work. (AR at 106-07, 379; *see also id.* at 17-18.) Plaintiff cites to no
20 treating or examining physician's opinion that contradicts Dr. Swickard or Dr.
21 Sawyer's opinion. A lack of objective evidence supporting Plaintiff's symptoms
22 cannot be the sole reason for rejecting Plaintiff's testimony. *Rollins v. Massanari*,
23 261 F.3d 853, 856-57 (9th Cir. 2001). However, it can be one of several factors
24 used in evaluating the credibility of Plaintiff's subjective complaints. *Id.*

25     Second, the ALJ properly relied on a lack of treatment in rejecting Plaintiff's
26 subjective complaints of pain. *Johnson v. Shalala*, 60 F.3d 1428, 1433-34 (9th Cir.
27 1995); *cf. Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (claimant's failure to
28 seek treatment due to inability to pay cannot support an adverse credibility

1   termination).  Plaintiff testified that he did not receive any treatment for his

2   complaints during the relevant time period.  Additionally, his explanation that he

3   "was never told [he] had osteoporosis" fails to adequately explain why he did not

4   seek treatment for such debilitating complaints of pain.  (AR at 407.)

5       It also appears from Plaintiff's testimony that he possessed medical insurance

6   until recently, and thus, was able to afford treatment.  (*See* AR at 404 (Plaintiff's

7   statement that "[n]ow that I started working a little bit, they took Medi-Cal away").)

8   In fact, Plaintiff's own testimony that he was the primary caretaker for two young

9   children, ages three and eight, and was responsible for the "almost everything" in

10  terms of "housework," "chores" and shopping for groceries belies the alleged degree

11  of disability.  (*Id.* at 411.)

12      Third, the ALJ rejected Plaintiff's statements based on Dr. Swickard's

13  observation that Plaintiff exaggerated his symptoms of pain.  This is a clear and

14  convincing reason.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)

15  (ALJ properly discredited Plaintiff's subjective complaints based on her tendency to

16  exaggerate her symptoms).  Here, the ALJ noted Dr. Swickard's observations that

17  Plaintiff "went through this obvious exaggerated motion of jerking during the exam

18  for his back and neck."  (AR at 379; *see also id.* at 17.)  Dr. Swickard indicated that

19  this movement "is not consistent with somebody with real neck or back problems."

20  (*Id.* at 379.)  Thus, the ALJ provided legally sufficient reasons for discounting

21  Plaintiff's subjective complaints of pain.

22          B.      Waiver of Right to Counsel

23      Plaintiff contends that the ALJ failed to properly obtain an informed waiver of

24  Plaintiff's right to counsel before proceeding with the hearing.  (*See* Joint Stip. at 4-

25  6.)  Plaintiff argues that the ALJ did not "inform Plaintiff of the ways in which an

26  attorney could assist with the proper development of this case."  (*Id.* at 6.)

27      As a result, Plaintiff maintains that he suffered prejudice because the ALJ

28  failed "to properly develop the record" and Plaintiff "was completely unaware of the

1    fact that he had to establish with medical evidence that he was disabled prior to June

2    30, 2001." (Joint Stip. at 6-9.) Plaintiff states that "[i]t is interesting that the ALJ

3    has failed to discuss references to Plaintiff undergoing a two level anterior

4    discectomy and fusion in his lumbar spine which appear in the Administrative

5    Record." (*Id.* at 8.)

6              1.    In the Absence of Counsel, ALJ Must Conscientiously and
7                    Scrupulously Develop the Record

8              A Social Security claimant has a statutory right to be represented by counsel

9    at an administrative hearing which may be knowingly and intelligently waived. 42

10   U.S.C. § 406; 20 C.F.R. §§ 404.1700, 416.1500. However, a "[l]ack of counsel does

11   not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or

12   unfairness in the administrative proceedings." *Key v. Heckler*, 754 F.2d 1545, 1551

13   (9th Cir. 1985) (quoting *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981)).

14   Therefore, the relevant issue is not whether Plaintiff properly waived his right to

15   counsel; instead, the issue is whether, in the absence of counsel, the administrative

16   hearing was fair. *Higbee v. Sullivan*, 975 F.2d 558, 561-62 (9th Cir. 1992) (*per

17   curiam*); *Vidal*, 637 F.2d at 714.

18             Where a claimant is unrepresented by counsel, it is "incumbent upon the ALJ

19   to conscientiously and scrupulously probe into, inquire of, and explore all the

20   relevant facts" at the hearing so as to protect the claimant's interests. *Cox v.

21   Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *accord Key*, 754 F.2d at 1551; *Vidal*,

22   637 F.2d at 713. When the "heavy burden imposed by *Cox*" is not met in this

23   context, and the unrepresented claimant may have been prejudiced, the "interests of

24   justice demand that the case be remanded." *Vidal*, 637 F.2d at 714-15.

25             2.    Plaintiff's Waiver of his Right to Counsel

26             At the hearing, Plaintiff appeared before the ALJ without representation. (AR

27   at 397-98.) At the onset of the hearing, the ALJ engaged in the following

28   unambiguous dialogue with Plaintiff regarding his right to counsel:

                                              9

| | | |
|---|---|---|
| 1 | [ALJ]: | Before I go any further, do you understand that you |
| 2 | | have the right to be represented at this hearing by an |
| 3 | | attorney? |
| 4 | [Plaintiff]: | Yes. |
| 5 | [ALJ]: | Have you tried to find an attorney or someone else |
| 6 | | to represent you? |
| 7 | [Plaintiff]: | Yes, I tried, about a week, a week ago. |
| 8 | [ALJ]: | About a week ago.  Okay.  How come you waited so |
| 9 | | long? |
| 10 | [Plaintiff]: | I never thought that this was so complicated. |
| 11 | [ALJ]: | Do you feel that you're prepared to go through with |
| 12 | | the hearing today or would you like a postponement |
| 13 | | to obtain an attorney? |
| 14 | [Plaintiff]: | I believe I can continue. |

(*Id.* at 397-98.)

### 3. The ALJ Fully and Fairly Developed the Record and Plaintiff Fails to Demonstrate Prejudice

Having scrutinized the record, the Court finds that Plaintiff knowingly and voluntarily waived his right to counsel and the ALJ met his burden to conscientiously and scrupulously probe into all the relevant facts at the hearing.  The Court's decision is grounded on three reasons.

First, as an initial matter, the Court finds that Plaintiff properly waived his right to counsel.  The hearing transcript reflects that Plaintiff could not obtain a representative, not that he did not understand his right to have such a representative. Instead, Plaintiff unequivocally waived his right to counsel and rejected the ALJ's offer to postpone the hearing so that he could obtain representation.  Further, as referred to by Defendant, (Joint Stip. at 9), it is notable that Plaintiff received at least two separate notices regarding his right to counsel prior to the hearing.  (*See* AR at

10

1   27-28, 29-32.)

2        Although Plaintiff argues that "he only was understanding about 50% of the

3   ALJ's statements/questions," (Joint Stip. at 6), the Court notes that a translator was

4   present at the hearing.  *See also Singmuongthong v. Astrue*, 2010 WL 3715152, at

5   *1, *9 (E.D. Cal. 2010) (proper waiver likely obtained where the plaintiff, who was

6   from Laos and spoke very little English and cannot read or write in English,

7   understood her right to counsel and an interpreter was present).

8        Second, even assuming *arguendo* Plaintiff did not properly waive his right to

9   counsel, the Court finds that Plaintiff did not suffer any prejudice, as the record was

10  fully and fairly developed.  While Plaintiff complains that the ALJ did not "advise

11  [him] that it was his burden to establish disability prior to June 30, 2001," (Joint

12  Stip. at 6-7), the ALJ specifically questioned Plaintiff about his complaints during

13  the relevant time period and his activities of daily living.

14       However, as discussed *supra* at § V.A.4, Plaintiff testified that he did not

15  receive any treatment during that time, and he was taking care of two young children

16  and performing the majority of the housekeeping and chores for his household.  (AR

17  at 406, 411.)  The ALJ was under no duty to probe the evidence any further given

18  Plaintiff's unambiguous testimony.  *See Mayes*, 276 F.3d at 459-60 (The ALJ's duty

19  to further develop the record is triggered when "there is ambiguous evidence or

20  when the record is inadequate to allow for proper evaluation of the evidence.").

21       Third, Plaintiff points to no specific facts, arguments or evidence an attorney

22  would have developed that could have changed the outcome of the proceedings.  *See*

23  *Santos v. Massanari*, 11 Fed.Appx 906, 906 (9th Cir. 2001).  Plaintiff states that the

24  record references "a two level anterior discectomy and fusion in [Plaintiff's] lumbar

25  spine." (Joint Stip. at 8.)  However, Plaintiff fails to state if in fact he underwent

26  such back surgery, and *equally notably*, whether there is evidence that certain

27  restrictions actually resulted from it.  (*See generally id.* at 2-9.)

28       Accordingly, Plaintiff fails to demonstrate prejudice and any alleged error that

1  resulted from Plaintiff's waiver of his right to counsel was harmless.  *Key*, 754 F.2d

2  at 1551.

3        Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

4  **AFFIRMING** the decision of the Commissioner denying benefits.

5

6  Dated: February 28, 2011                _____

7

8                             Hon. Jay C. Gandhi
                      United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28